FILED
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY
15 AUG 24 PM 2:48

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**RANDOLPH WIECK, BETSEY BELL, JANE NORMAN (ret.), et.al.**   **PLAINTIFFS**
On behalf of ourselves and all other Kentucky teachers
who are members of the Kentucky Teachers' Retirement System
as a Class Action

CIVIL ACTION NO. 3:15-cv-692-DJH

**BOARD OF TRUSTEES OF THE**   **DEFENDANTS**
**KENTUCKY TEACHERS' RETIREMENT SYSTEM (KTRS)**
Arthur Greene, Chair; Jay Morgan, Vice Chair; Hollis Gritton, Lay Trustee; Ronald Sanders, Lay Trustee; Quin Sutton, Active Teacher Trustee; Alison Wright, Active Teacher Trustee; Todd Hollenbach, Ex-Officio; Terry Holliday, Ex-Officio
And Staff and Advisors to the KENTUCKY TEACHERS RETIREMENT SYSTEM including: Gary L. Harbin, Executive Secretary; Robert B. Barnes, Deputy Executive Secretary of Operations; Eric Wampler, Deputy Executive Secretary; Paul Yancey, Chief Investment Officer; Bevis Longstreth & George Philips, Investment Advisors to KTRS Investment Committee
And process agents for private equity limited partnerships, including Carlyle Group; Blackstone Group; KKR & Co. Rockwood Capital, Highbridge-JPMorgan
And Legal Advisor -Attorney General Jack Conway; Auditor of Public Accounts Adam Edelen; Kentucky Educational Association.

Serve:  Gary L. Harbin, Process Agent for the Board of Trustees of the Kentucky Teachers' Retirement System
479 Versailles Road
Frankfort, KY 40601

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

1 The class of teachers is so numerous, that joinder of all members is impractical.

2 There are questions of law or fact common to the class.

3 The claims or defenses of the representative parties are typical of the claims or defenses of the class and the representative parties will fairly and adequately protect the interest of the class.

4 The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudication with respect to the members of the class and would establish incompatible standards of conduct for the parties opposing the class or adjudication with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members; or substantially impair, or impede their interests; or if the party opposing the class refuses to act, or has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## BACKGROUND

5 Kentucky teachers historically contributed 9% to KTRS deducted from their pay,[i] which has been far above the average of states in the region.[ii] KTRS allowed the legislature to underfund the employer portion by which action it corrupted the pension and retiree health systems, making KTRS the single worst-funded state teacher plan in the United States. Instead of demanding publicly and in legal action that the state pay its legally stipulated share, KTRS trustees have acquiesced to political pressure and forced teachers not only to pay their share, but - at a rate of nearly 13% - to pay an additional 40% not for their own earned benefits in that period, but for other retirees' benefits and for the interest on the debt resulting from this corrupted system. This taking was done under the guise of charging for retiree health benefits with the same net effect. Kentucky teachers are barred from participating in Social Security and rely solely on KTRS for their retirement security.

6 Former Yale Professor Charles Reich described the role of pensions in a public employee's life: *No form of government largess is more personal or individual than an old age pension. No form is more clearly earned by the recipient.... No form is more obviously a compulsory substitute for private property; the tax on wage earner and employer might readily have gone to higher pay and higher private savings instead. No form is more relied on, and more often thought of as property. No form is more vital to the independence and dignity of the individual*. In 1996, this article was found to be the fourth most-cited article among all law review articles ever published.[iii]

7 By creating a corrupted system, KTRS Trustees and Staff have caused the miscalculation of the employee share of benefits payments for pension and retiree health, causing teachers to be underpaid with lower net proceeds of nearly 4% in violation of the Fair Labor Standards Act, 29 U.S.C. §§201, et seq. This also violates the Contract Clause of the U.S. Constitution creating a contract impairment due to diminished benefits Art. I, § 10.

8 KTRS' mismanagement, resulting in the worst-funded teacher pension in the country, clearly impairs the contractual relationship with Kentucky teachers; it also impairs and diminishes the impact of Federal Educational grants and support for both teachers and students. The corrupt

KTRS system enables federal education funds intended for current instruction to be diverted elsewhere, and also forces federal funds intended for current time periods, instead to be used to pay for KTRS pension liabilities and interest incurred in prior periods.

9 This impairment to the contract, amounting to over $20 billion in unfunded pension liabilities, is clearly of constitutional dimensions. The current KTRS impairment is significant and there is a legitimate public purpose in fixing it. Adjustments requested in this case are reasonable and appropriate.

10 The court has ruled that such an increase in required payments without a corresponding increase in benefits would be "presumptively invalid" as an impairment of contract under U.S. Trust Co. v. New Jersey, 431 U.S. 1, 17 (1977) and other cases. [iv]

11 Lower net pay violates the Takings Clause of U.S. Constitution by divesting public employee benefits without just compensation. (Amendment V "... nor shall private property be taken for public use, without just compensation. U.S. CONST. Amend. V.) A reduction in government retirement benefits may constitute an abridgement of a property right. [v] This provision is made applicable to the states under the Fourteenth Amendment to the United States Constitution.[vi] "Because the concepts of fairness and justice that underlie the Takings Clause 'are less than fully determinate,' the Supreme Court has 'eschewed any set formula for determining when justice and fairness require that economic injuries caused by public action be compensated by the government.'" [vii] Consequently, "the determination of whether a taking has occurred is highly fact-specific, depending on the particular circumstances underlying each case."[viii] For this reason, complex multi-billion dollar claims like this under the Takings Clause are particularly unsuited for resolution before discovery has occurred. In Penn Central, the Supreme Court identified "several factors that have particular significance" in the takings analysis.[ix] *"Primary among those factors are the economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.'* Several cases arose under the Contract Clause[x] but also apply to the Takings Clause on property rights. [xi]

12 Lowering the net pay in back-room deals violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution (for depriving employees of property rights without due process). The Fifth Amendment to the U.S. Constitution provides: No person shall [...] be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. (U.S. CONST. AMEND V). The Fourteenth Amendment makes the protections afforded by the Fifth Amendment applicable to the states by providing: All persons born or naturalized in the United States, and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. AMEND XIV, § 1. and

13 We strongly feel this case is of Federal importance and should proceed but know that KTRS likely claim sovereign immunity. Given this, we want to point to an exception to Eleventh Amendment immunity that exists under the U.S. Supreme Court's opinion in *Ex Parte Young*, which allowed a federal court action against state officials to proceed because the plaintiffs sought purely prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 168 (1908); Myers, 410 F.3d at 240. In particular, the *Ex Parte Young* exception allows a federal court, consistent with the Eleventh Amendment, to "enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury." Quern v. Jordan, 440 U.S. 332, 337 (1979).

14 The Kentucky Teachers' Retirement System (KTRS) is one of the worst-funded pensions in the country, but its thousands of members have not been adequately apprised, and remain woefully unaware of this fact.[xii] KTRS in its newsletters did not discuss increased teacher contributions and in fact colluded with state government in back-room deals including the Kentucky Education Association (KEA), and the Jefferson County Teachers Association (JCTA), both of which also did not clearly inform teachers of this taking from their paychecks.

15 The Federal Government Accounting Office says the standard for a pension to be healthy is an 80% or greater funding level.[xiii] This 80% standard is reiterated in publications by Pew and the Stanford Center for Economic Research. KTRS sank under 80% funding in 2005.[xiv] KTRS in its newsletters for close to 10 consecutive years did not inform its membership of the severity of the underfunding.

16 Standard & Poor's (S&P) rates pensions at 90% and greater funding as Strong; 80% to 90% Above Average; 60% to 80% as Below Average; and 60% and below as Weak.[xv] Fitch ratings considers 70% and above as Adequate and 60% and below as Weak. KTRS sank below 60% funding in 2011.[xvi]

17 As late as 2007 KTRS had no alternative investment managers listed in their Comprehensive Annual Financial Report; by 2013 there were 31 alternative managers listed[xvii] and KTRS continued to add alternative investments in 2014 and 2015 after the filing of a lawsuit against another Kentucky State Pension plan for the illegal purchase of alternatives.[xviii] Alternative managers have been criticized extensively in the National Press for underperformance, excessive fees, excessive risks, and a lack of transparency.[xix]

18 KTRS reported in December 2013 that its official funding ratio as of June 2013 was 51.9%. Still, at that point, neither KTRS nor the teacher organizations KEA and JCTA, had properly alerted their members. KTRS staff at the June, 2014 board meeting predicted that the funding level percentage would be in the low 40s. Over the last five (5) years, according to KTRS numbers, the system has been shorted over $1.8 billion in funding by the KY legislature.[xx] Only in 2014 did KTRS finally alert its members of this dire condition.

19 The Western District of Kentucky (May 2014), Seven Counties Opinion on the Kentucky Employee Retirement Systems - has very similar issues to KTRS in its underfunding by the

Kentucky Legislature: *The KRS board adopts a recommended employer contribution rate that represents the actuarially required contribution rate (the "ARC"). Ultimately, however, the legislature sets the rates in the Executive Branch Budget. In fifteen out of the last twenty-two years, the rate set by the legislature was less than the ARC[xxi] [...] The solvency of the fund to meet future retirement obligations is dependent upon consistent payment of the ARC. The failure to pay the ARC, as that rate is reassessed annually by actuaries employed by KRS, will almost certainly result in a fund that is insufficient to pay future retiree benefits.[xxii]* KTRS underfunding has resulted in very similar solvency issues.

## INTRODUCTION

20 The Plaintiffs in this case are teachers or retired teachers. This case is filed by the Plaintiffs on behalf of a class of similarly situated teachers (and retired teachers) who have suffered nearly 4% take-home pay cuts because of KTRS corruption allowing dangerous underfunding.

21 The members of the class are all beneficiaries of a fiduciary relationship between KTRS and its participants. The fiduciary is the defendant, the Board of Trustees of the Kentucky Teachers' Retirement System (KTRS) established under KRS 161.250.

22 In 2010, KTRS Trustees sought secretly to fix what amounted to an illegal borrowing from the KTRS pension for the KTRS retiree health plan. In a back-room deal with state officials and the KEA, KTRS approved a nearly 4% additional taking from teachers, calling it a payment for retiree health care. Also, once again working in collusion to cover up the underfunding problem[xxiii] [xxiv], KTRS secured the issuance of over $888 million in secret, taxable Pension Obligation Bonds[xxv] (in 2010) which issuance was presented as support for retiree health care. This bond issuance was in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act[xxvi] since KTRS misrepresented, and failed to disclose, material information regarding KTRS underfunding.[xxvii] The Kentucky Asset Liability Commission (ALCO) which issued the bonds consists of the Governor's representative, the treasurer and the attorney general.[xxviii] This ALCO group's lack of public disclosure and the failure of KTRS and KEA to inform their members on this issue - led to this huge pension obligation bond remaining unknown to the public for two years.

23 KTRS has failed in their fiduciary duty by not aggressively and publicly demanding the full funding they need to stay solvent. Among the board's duties is to hire an actuary under KRS 161.400.[xxix] Another duty is to fully fund the system as to the actuarially required contribution as outlined in KRS 161.550. They have clearly failed to fully fund the system for the past five (5) consecutive budget cycles in excess of $1.8 billion by accepting the budget of the general assembly.[xxx]

24 KTRS has failed to lobby the general assembly aggressively for this funding - which is a breach of their fiduciary duty. KTRS has failed in their fiduciary duty by not informing the

membership of the system's dire funding status.[xxxi] The board has the fiduciary duty to inform the beneficiaries/participants of major material issues and problems with the plan. Moreover, the board cannot claim independence because of flawed State Laws such as KRS 161.260 which gives control of the KTRS trustee voting process to the President of the KEA and to the Executive Secretary of KTRS.

25 The KTRS board controls the content of a quarterly newsletter to tens of thousands of teachers and retired teachers. The board, on its website and in its regular communications with participants, has not discussed this issue, and it can be argued, has covered up the fact that KTRS is one of the worst-funded teacher pension plans in the country. They have not disclosed to the broader teacher population in a meaningful way the ongoing $400 million-a-year underfunding, and the extremely damaging impact of this underfunding on the solvency of the plan.[xxxii]

26 KTRS has violated transparency laws under KRS 161.250 4(d). They have not posted reported board minutes in a timely manner to keep teachers and retired teachers informed. The June 2014 minutes, if complete and posted, would have informed the members of the possibility of the funding ratio dipping into the 40s (assets/liabilities).[xxxiii]

27 KTRS has failed in their fiduciary duty by not aggressively exposing flawed and biased research in the legislature's pension reform process. KTRS has been seriously negligent in not informing its members that an enemy of teachers nationwide (according to the National Education Association ((NEA))[xxxiv] and American Federation of Teachers ((AFT))[xxxv]) - the Arnold Foundation - has been accepted as the major provider of pension reform guidance for the Kentucky state legislature.[xxxvi] KTRS has failed to make the Arnold influence a Kentucky media and political issue despite extensive national press coverage.[xxxvii] KTRS has not publicly supported pro-teacher legislators in Kentucky who have protested the role of the Arnold Foundation in Kentucky pensions, as evidenced in the attached letter from Jim Wayne and other legislators.[xxxviii]

28 KTRS has failed in their fiduciary duty by not being vigilant of investment policies that may harm teachers. It is not in line with their fiduciary duty to invest with managers who - according to a list provided by the American Federation of Teachers (AFT)[xxxix] - work against teacher pension funding nationwide. KTRS' main investment consultant (Ennis Knupp-AON) appeared on an AFT Caution List, and this detrimental issue should have been discussed by the board (even though the consultant, under pressure from other alert teacher retirement plans in other states, has since reformed its practices and been removed from the AFT list). A current KTRS Alternatives manager, Highbridge, remains on the AFT list, meaning KTRS investment policy remains hostile to the best financial interests of teachers. The KTRS elected trustees have breached their fiduciary duty to the teachers they represent by allowing the selection of vendors who use fees from KTRS to further causes against public school teachers. The elected trustees have done this by improperly ceding what is their fiduciary duty (to choose Service Providers) to the Executive Secretary.[xl]

29 KTRS has failed in their fiduciary duty by selecting investments and investment managers not permitted by statute of the Commonwealth of Kentucky. KTRS has invested in high-risk alternative investments not appropriate for fiduciaries under the common law KRS 386.020. A new national study suggests that poorly funded pensions like KTRS should have lower allocations to alternatives, especially illiquid assets like Private Equity.[xli] Many of these alternative investment entities have not documented in their contracts that they adhere to investment ethics and disclosure rules as required by KRS 161.430. KTRS Trustees have allowed numerous alternative investment managers to violate Kentucky state law KRS 161.430 on ethics and disclosure - which also constitutes violations of Federal Law Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 .(SEC vs. ZPR Investment Management, Inc. May 27, 2014). KTRS (in Fiscal Year 2014) admitted to paying $9.2 million to alternative investment managers in secret no-bid contracts. KTRS managers who have hired lobbyists in Frankfort include KKR, JP Morgan (Highbridge) and Blackstone - which has 16 listings on the executive branch lobbyist list (all affiliates and placement agents combined).[xlii]

30 KTRS has refused to provide the contracts of even a few of these high-risk investments in answer to an October, 2014 open records request by plaintiff Randolph Wieck - similar to refusals by the other major Kentucky pension[xliii] and requests in other states.[xliv]. KTRS secret investment contracts with Wall Street Private Equity firms are not only too secret for a teacher to see, they are too secret for KTRS trustees to see; too secret for the Kentucky State Auditor to see; and too secret for the Kentucky Legislative Contract review committee to see as well. Further, KTRS ignores state competitive bidding laws, awarding these multi-million-dollar contracts to firms in secret back-room deals.[xlv] KTRS has not publicly supported legislation that requires full disclosure of contracts on alternative investments.[xlvi]

31 Federal intervention is required because the safeguards and regulations put forth in Kentucky Law as checks and balances have been ignored by KTRS. Under Kentucky Revised Statute 161.370 KTRS is required to use the State Treasurer as its Treasurer; the State Auditor for its audits; and the Attorney General for legal counsel. While the Treasurer sits on the board he cannot reasonably fulfill his duty as custodian of the assets as outlined in 161.380. In a letter dated July 21, 2015, eleven state Treasurers urged the SEC to require better disclosure of private equity expenses.[xlvii] The Kentucky Treasurer, a KTRS trustee, declined to join this effort to lower investment fees. Further, there has recently been created a website counting the days the State Auditor has refused to do an audit on KTRS.[xlviii] The 2012 Independent Counsel report by former SEC attorney Edward Siedle documents how the Auditor's office helped cover up and enable public corruption in the KTRS' sister retirement system, KRS.[xlix] KTRS has spent hundreds of thousands of dollars (if not more) on outside legal counsel, while the Attorney General (according to KRS 161.370) is required to provide legal services to KTRS at no cost to plan participants.

32 KTRS has been accused of failing in their fiduciary duty through poor performance in investments. According to a letter from the Chair of the Kentucky House Appropriations and

Revenue Committee (Rick Rand), 52% of the funding shortfall in KTRS assets has been caused by poor investments controlled by KTRS.[l] KTRS has failed in their fiduciary duty by not explaining or defending this claim to their membership. We believe the source of these numbers to be the Arnold Foundation. KTRS in their silence has offered tacit support to the Arnold Foundation and these numbers.

33 A good portion of the nearly $3 billion in Federal education funding for Kentucky is supposed to be spent on employee compensation – which is a combination of salary and benefits to be used in the time frame of the grant. Of the benefits, a significant part goes to KTRS for retirement and retiree health. For this retirement and retiree health benefit, the correct amount of Federal spending would be the full ARC payment. When the responsible entity does not pay the full ARC into KTRS, it is diverting these federal funds to other uses such as constructing administrative buildings, or by sidestepping the necessary state and local increase of property or other taxes.

34 An impaired KTRS system that has a $20 billion deficit, (at an assumed rate of 7.5%) creates $1.5 billion in additional interest costs that are then, in part, footed illegally by the federal government. This impaired system must then artificially inflate ARC payments – with the end result being that Federal funds intended for 2015 educational funding are used to pay underfunding and the interest on underfunding from the years 2004-2014 (to current retirees).

35 The corrupt KTRS system enables Federal funds intended for employee compensation to be diverted elsewhere, and also forces Federal funds intended for current time periods, to pay for KTRS debt and interest incurred in prior periods.

36 KTRS trustees, in allowing this corrupt, underfunded system, caused Regional Universities (Western[li], Eastern[lii], Murray[liii], Morehead[liv], Northern[lv]) to issue over $105 million in non-taxable municipal bonds in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act since these bonds were misrepresented, and failed to disclose significant material information regarding KTRS' underfunding.[lvi] This caused investors to be deceived about the credit quality of the bonds they were buying.

## PARTIES

37 The Plaintiff Teachers Randolph Wieck and Betsey Bell contribute from their paychecks into the system with the expectation that the state will contribute the matching amount as outlined in KRS 161.550. They have contributed for many years and are relying on this retirement.

38 The KTRS Board has all the powers of a corporation and can be sued. 161.370 designates the State Auditor as the official KTRS auditor; and the Attorney General as official KTRS legal

counsel. Kentucky Educational Association (KEA) is named in this suit because KRS 161.260 gives extraordinary powers to the President of the KEA in the KTRA trustee voting process.

39 KTRS has, in the last 8 months, added 8 new private equity partnerships, committing over $595 million,[lvii] despite a pending suit claiming that the KTRS Private Equity purchases are illegal,[lviii] . Since the (state) legal filing of November 10, 2014 stating KTRS alternative investments in violation of KRS 386.020 and KRS 161.430, plaintiffs maintain KTRS has committed the following additional illegal investments: March 15, 2015 $180 million to Carlyle Group, Blackstone Group, and Rockwood Capital; Dec 14, 2014 $235 million to limited partnerships of Audax Group, KKR & Co., Riverstone Holdings, and Oaktree. KTRS has refused to provide legal disclosure of limited partnerships as discussed in the national media.[lix]

40 KTRS claims that after its failed bid for a Pension Obligation Bond in the 2015 legislative session, its funding ratio has dropped to 42%, making it clearly the worst-funded state teacher plan in the nation.[lx] Neither KTRS nor the KEA in this 2015 political push mention the secretly issued $888 million in Pension Obligation Bonds from 2010. The Kentucky Asset Liability Commission - which issued the bonds and consists of the Governor, Treasurer and Attorney General - was able to soft-pedal this maneuver so that it was not reported in the general press until 2012.[lxi] Both KEA and KTRS use the same politically-connected public relations firm (Peritas) that was paid $95,000 in FY 2014 by KTRS.

41 KTRS has repeatedly refused to inform its members of the billions of dollars in the budget of unfunded liability as this has occurred and has looked the other way:

|  | Agency Request | Actual | Shortfall | ARC Funding |
|---|---|---|---|---|
| 2015-2016 | $591,881,800 | $182,881,800 | -$409,000,000 | 31% |
| 2014-2015 | $596,466,400 | $206,079,200 | -$390,387,200 | 35% |

42 The plaintiff Randolph Wieck did not originally file in Franklin Circuit because of a significant concern of not receiving a fair trial. However, the Jefferson County Judge directed him back to Franklin Circuit, forcing plaintiff to seek redress from the Federal Court. A recent Harvard study named Frankfort one of the most corrupt state capitols in the nation and the FBI has recently started a major public corruption probe in the state.[lxii] The Wieck case has garnered national attention with 15 media stories on the filing.[lxiii] Further evidence of this culture of cover-up and corruption in Frankfort has been documented in widespread media coverage of KTRS denying Wieck information on this case, with an additional 30 media stories and editorials appearing on the subject, ranging from the Lexington Herald Leader, and Louisville Public Radio, to the San Francisco Chronicle, Bloomberg Business Week, Forbes, and Bill Moyers.[lxiv]

43 KTRS has chosen as its attorney Robert Kellerman who has a record of favorable rulings blocking transparency and accountability with the other retirement system (KRS) in Franklin County Circuit - most notably Powell vs. KRS (10-CI-00186 Mar. 2010 Judge Wingate) on

technicalities. Moreover, Kellerman is so close to Franklin County Circuit Court that he hired Judge Thomas Wingate's son as his personal law clerk, as documented in KY Horse Racing Commission vs. Family Foundation KY (10-CI-01154 Apr.2014).

WHEREFORE   Plaintiffs Demand

44 The Court find that the nearly forty percent increase in contribution (from 9% to nearly 13%) by teachers constituted an unconstitutional impairment of the employees' contract rights and is a violation of the Fair Labor Standards Act because the disadvantageous modification in the pension plan and retiree health plan was not accompanied by any counterbalancing advantage to the employee.

46  That the court order that any amounts collected in excess of the original contribution rate be refunded to the plan members to restore the damages to teachers in prior years.  If the Court does not feel that it can demand retroactive relief for teachers, may it consider providing forward prospective injunctive relief via *Ex Parte Young;* and that the Court demand that the future Kentucky teacher contribution reflect the earned benefits of that teacher - and not be used to pay for the interest resulting from poor management of KTRS.

47 That KTRS communicate fully and honestly to its members on its web site and in publications sent to participants, on the <u>severe</u> state of underfunding, and on the sources of information the General Assembly uses to determine pension policy; and how this underfunding has resulted in the nearly 4% reduction in teacher take-home pay.

48 That KTRS lobby the State not only to make full ARC payments, but that KTRS immediately demand full funding from the General Assembly in a public forum - including forthright communications to all members - and initiate an aggressive lobbying campaign involving and informing all KTRS members.

49 If full funding is not provided within a year by the legislature, KTRS is to support - publicly and financially - legal action on behalf of its members against the General Assembly.

50 That the Court demand that all Federal education funds are directed for education in the periods they are intended and are not used to pay pension payments to retirees, nor for interest on debt within the KTRS system.  This could effectively be done by holding back Federal funding to any educational institution within KTRS that does not pay 100% of the Actuarially Required Contribution.

51  That KTRS amend its investment guidelines to allow only investments appropriate for fiduciaries, (KRS 386.020) and investment managers willing to contractually agree to State

ethics requirements KRS 161.430; and exclude those managers on the publicly-available, American-Federation-of-Teachers list that work to harm teacher retirement plans.

52. Since claims are brought pursuant to the civil rights procedural vehicle of Section 1983, plaintiffs are entitled to their attorney's fees and costs.

---

[i] KTRS website http://ktrs.ky.gov/03_employer/_forms_reports/presentations/KASA%20Finance%20Institute%203-20-08-22.pdf
[ii] Southern Regional Education Board http://publications.sreb.org/2001/01s03a_beyondsalaries.pdf
[iii] See Fred R. Shapiro, "The Most-Cited Law Review Articles Revisited," 71 Chicago-Kent L.R. 751, 760 (1996)

[iv] Amy Monahan U.of Minnesota http://www.ncsl.org/documents/fiscal/AMonahan_Handout.pdf U.S. Const. art. I, sec. 10, cl. 1; U.S. Trust Co. v. New Jersey, 431 U.S. 1, 17 (1977)) (Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 240 (1978)) (Baltimore Teachers' Union v. Mayor and City Council of Baltimore, 6 F.3d 1012, 1017 (4th Cir. 1993)). (Civil Serv. Employees Ass'n Inc., Local 1000 v. Regan, 525 N.E.2d 1 (N.Y. 1988)) (Birnbaum v. New York State Teachers' Ret. Sys., 152 N.E.2d 241 (N.Y. 1958)

[v] (See Phillips v Wash Legal Found., 524 U.S. 156 (1998)).

[vi] Penn Central Transp. Co. v. New York City, 438 U.S. 104, 122 (1978). http://pensionlitigation.org/wp-content/uploads/2014/04/2010-09-07-00-Ps-Brief-in-Opposition-to-Defs-MSJ.pdf
[vii] Wensmann, 734 N.W.2d at 632 (quoting Palazzolo v. Rhode Island, 533 U.S. 606, 633 (2001)).
[viii] Westling v. > County of Mills Lake, 581 N.W.2d 815, 823 (Minn. 1998);
[ix] 438 U.S. at 124
[x] Parella v. Retirement Bd. of Rhode Island Employees' Retirement System, 173 F.3d 46, 58-59 (1st Cir. 1999)
[xi] Professional Firefighters Ass'n of Omaha, 2010 WL 2426446
[xii] Jonathan Meador August 2014 http://wfpl.org/post/jcta-louisville-educators-clash-over-underfunded-teachers-pension#.U_Zm6doFB7c.facebook and April 2014 http://wfpl.org/post/kentuckys-teacher-retirement-system-may-become-one-worst-funded-us#.U-qlR87xmls.facebook and May 2014 http://wkms.org/post/public-school-teachers-mulling-pension-lawsuit-against-legislature
[xiii] http://www.gao.gov/assets/270/267150.pdf
[xiv] http://www.actuary.org/files/80_Percent_Funding_IB_071912.pdf

[xv] http://www.actuary.org/files/80_Percent_Funding_IB_071912.pdf

[xvi] http://www.actuary.org/files/80_Percent_Funding_IB_071912.pdf

[xvii] KTRS website CAFR's http://ktrs.ky.gov/05_publications/reports/financial/2007AR4-INVESTMENT.pdf

[xviii] CITY OF FORT WRIGHT vs. County Employees Retirement System CASE NO. 14-CI-1085

[xix] Gretchen Morgenson http://www.nytimes.com/2014/10/19/business/retirement/behind-private-equitys-curtain.html
[xx] Provided by KTRS June 6, 2014 letter from Beau Barnes
xxi UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF KENTUCKY LOUISVILLE DIVISION SEVEN COUNTIES SERVICES, INC. CASE NO. 13-31442(1)(11)vs KENTUCKY EMPLOYEES RETIREMENT pg 31 May 30, 2014
xxii UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF KENTUCKY LOUISVILLE DIVISION SEVEN COUNTIES SERVICES, INC. CASE NO. 13-31442(1)(11)vs KENTUCKY EMPLOYEES RETIREMENT
xxiii Lexington Herald Leader John Cheves http://www.kentucky.com/2012/11/10/2403333/kentuckys-pensions-are-woefully.html
xxiv http://www.kentucky.com/2012/11/10/2403333/kentuckys-pensions-are-woefully.html .
xxv Municipal Disclosures http://emma.msrb.org/EP458166-EP358093-EP755131.pdf  $467mm April 2010

xxvi SEC ADMINISTRATIVE PROCEEDING File No. 3-14009 In the Matter of STATE OF NEW JERSEY

xxvii Municipal Disclosures http://emma.msrb.org/EP458166-EP358093-EP755131.pdf

xxviii KY State Government http://finance.ky.gov/services/ofm/Pages/KentuckyAssetLiabilityCommission.aspx
xxix KTRS website http://ktrs.ky.gov/05_publications/2011%20Lawbook-searchable.pdf

xxx Provided by KTRS
xxxi Joe Sonka July 2014 http://leoweekly.com/news/abandon-ship

[xxxii] Mike Wynn http://blogs.courier-journal.com/politics/2013/12/16/funding-slips-for-kentucky-teacher-pensions/
[xxxiii] KTRS website
[xxxiv] Mary Ellen Flannery http://neatoday.org/2014/09/24/smoke-mirrors-and-pension-reform/

[xxxv] Randi Weingarten http://www.aft.org/column/real-retirement-crisis
[xxxvi] David Sirota http://educationvotes.nea.org/2014/02/20/pbs-series-unfairly-attacking-retirement-security-of-public-employees-put-on-hiatus/ and http://www.salon.com/2013/09/26/exposed_enron_billionaires_diabolical_plot_to_loot_worker_pensions/

[xxxvii] Matt Taibbi http://www.rollingstone.com/politics/news/looting-the-pension-funds-20130926#ixzz3HGRYMWB1 and Darell Preston http://www.businessweek.com/news/2014-08-21/billionaire-arnold-s-pension-push-makes-him-workers-bane and Tim Reid http://www.reuters.com/article/2014/11/05/us-usa-elections-pensions-phoenix-idUSKBN0IP1O320141105

[xxxviii] See June 19, 2013 Letter from Jim Wayne, etc to other states on Arnold influence on Kentucky pension reform
[xxxix] Dan Pedrotty http://www.aft.org/sites/default/files/news/RankingAssetManagers0413.pdf
[xl] KTRS website http://ktrs.ky.gov/08_about_KTRS/Governance%20Manual/Board%20Governance%20Manual%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.pdf

[xli] NCPERS http://www.ncpers.org/files/NCPERS_JPMorgan%20White%20paper_Striking%20the%20balance_final.pdf
[xlii] Kentucky Executive Branch Ethics Commission – List of Lobbyists http://ethics.ky.gov/SiteCollectionDocuments/lobbying/EAListingByEmployerAndParty
[xliii] John Cheves http://www.kentucky.com/2014/06/14/3292113_kentucky-retirement-systems-pays.html?rh=1 and Jim McNair http://kycir.org/2014/07/24/when-it-comes-to-investments-kentucky-keeps-pension-holders-in-the-dark/
[xliv] Mike Spector and Mark Maremont http://online.wsj.com/articles/buyout-firms-push-pension-funds-to-keep-information-under-wraps-1415142588
[xlv] KRS 45A.100 and 45A.080
[xlvi] Jim McNair http://wfpl.org/post/state-rep-jim-wayne-proposes-kentucky-pension-transparency-changes

[xlvii] Susan Webber http://www.nakedcapitalism.com/2015/07/state-officials-try-to-hide-their-private-equity-oversight-failures-by-asking-the-sec-to-exceed-its-authority.html

[xlviii] Website funded by Harmon for Auditor campaign http://www.noactionadam.com/
[xlix] Independent Counsel 2012 Report by Edward Siedle to SEC http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2112594
[l] Letter from State Representative Rick Rand to KY Teacher Feb. 6, 2014

[li] Municipal Bond Registry http://emma.msrb.org/EP656302-EP511979-EP913060.pdf  Western Kentucky University $36 million May 2012

[lii] http://emma.msrb.org/ER597606-ER464177-ER867079.pdf Eastern Kentucky U. $27 million April 2012

[liii] http://emma.msrb.org/ER482310-ER375106-ER772991.pdf Murray U. $28 million Sept. 2011

[liv] http://emma.msrb.org/EA465305-EA360664-EA756680.pdf Morehead U. $5 Million November 2011

[lv] http://emma.msrb.org/EA465149-EA360523-EA756538.pdf Northern KY $9 million September 2011
[lvi] SEC ADMINISTRATIVE PROCEEDING File No. 3-14009 In the Matter of STATE OF NEW JERSEY

[lvii] Pensions & Investments http://www.pionline.com
[lviii] BloombergBusinessweek Neil Weinberg & Darryl Preston March 23, 2015 http://www.bloomberg.com/news/articles/2015-03-23/7-ways-private-equity-is-gaming-your-pension
[lix] Pension 360 News http://pension360.org/kentucky-teachers-pension-continues-to-shield-investment-data-from-public-view/
Jim McNair http://wfpl.org/post/kentucky-teachers-retirement-system-denies-louisville-educators-request-investment-information Dec. 1, 2014
John Cheves http://www.kentucky.com/2014/11/28/3564011_question-for-legislators-how-much.html
http://www.kentucky.com/2014/12/03/3574094/ky-pension-system-is-public-business.html
David Sirota http://www.ibtimes.com/kentucky-pension-investments-state-says-retirees-have-no-right-know-details-fees-1732313 http://preaprez.wordpress.com/2014/12/03/would-you-please-come-to-kentucky-and-do-what-you-are-doing-for-illinois-teachers-wrote-randy-wieck/
http://www.timesdispatch.com/opinion/their-opinion/columnists-blogs/david-sirota/sirota-pension-money-a-multibillion-dollar-secret/article_d7188557-7074-539a-8b67-c02b8b8cfa10.html
http://bit.ly/1w8uJur
http://www.sfgate.com/opinion/article/States-keep-secret-costly-deals-to-invest-public-5935893.php
http://dianeravitch.net/.../david-sirota-kentucky-blocks-tea.../
http://teacherwise.wordpress.com/.../a-multi-billion-dollar-...

[lx] Kevin Wheatley http://mycn2.com/politics/kentucky-teachers-retirement-system-offers-two-bonding-proposals-to-shore-up-funding

[lxi] Lexington Herald Leader John Cheves 11/10/12 http://www.kentucky.com/2012/11/10/2403333_kentuckys-pensions-are-woefully.html

[lxii] Insider Louisville, Joe Sonka Dec. 14 http://insiderlouisville.com/metro/harvard-study-kentuckys-state-government-one-corrupt-country

[lxiii] WFPL Devin Katayama Nov. 14 http://wfpl.org/post/manual-high-teacher-sues-kentucky-teachers-retirement-system-over-underfunding
http://www.courier-journal.com/story/news/politics/ky-legislature/2014/11/10/jcps-teacher-sues-pension-system/18806717/
http://www.whas11.com/story/news/local/2014/11/10/louisville-teacher-files-class-action-lawsuit-against-ky-teacher-retirement-system/18820773/ Joe Sonka http://insiderlouisville.com/metro/education-community/louisville-teacher-files-lawsuit-kentucky-teachers-retirement-system-troubled-pensions/ http://wkms.org/post/teacher-files-lawsuit-against-ky-teachers-retirement-system
http://preaprez.wordpress.com/2014/11/10/kentucky-teacher-randy-wieck-if-this-tanks-and-its-very-likely-it-will-we-will-retire-into-poverty/
http://www.manualredeye.com/2014/11/17/manual-teacher-sues-kentucky-teachers-retirement-system/
http://www.forbes.com/sites/edwardsiedle/2014/11/21/kentucky-teachers-sue-retirement-system-over-secretive-alternative-investments/
https://www.facebook.com/pages/Teacher-Retirement-Legal-Fund-TRELF/597407450354989 video School
http://pension360.org/teacher-sues-kentucky-pension-system-over-funding-status-transparency-issues/

[lxiv] Ted Ballantine Pension 360 http://pension360.org/kentucky-teachers-pension-continues-to-shield-investment-data-from-public-view/
Jim McNair Kentucky Center for Investigative Reporting http://wfpl.org/post/kentucky-teachers-retirement-system-denies-louisville-educators-request-investment-information Dec. 1, 2014 John Cheves Lex H-L
http://www.kentucky.com/2014/11/28/3564011_question-for-legislators-how-much.html
http://www.kentucky.com/2014/12/03/3574094/ky-pension-system-is-public-business.html
David Sirota http://www.ibtimes.com/kentucky-pension-investments-state-says-retirees-have-no-right-know-details-fees-1732313 http://preaprez.wordpress.com/2014/12/03/would-you-please-come-to-kentucky-and-do-what-you-are-doing-for-illinois-teachers-wrote-randy-wieck/
http://www.timesdispatch.com/opinion/their-opinion/columnists-blogs/david-sirota/sirota-pension-money-a-multibillion-dollar-secret/article_d7188557-7074-539a-8b67-c02b8b8cfa10.html http://bit.ly/1w8uJur
http://www.sfgate.com/opinion/article/States-keep-secret-costly-deals-to-invest-public-5935893.php http://dianeravitch.net/.../david-sirota-kentucky-blocks-tea.../ http://teacherwise.wordpress.com/.../a-multi-billion-dollar-.../ http://flowersforsocrates.com/.../should-public-employees-kn http://www.oregonlive.com/.../secret_public_pension_investme...
http://www.noozhawk.com/.../david_sirota_secrecy_of_retiremen... http://www.summitdaily.com/.../14.../pension-state-firms-private
http://www.salon.com/.../wall_streets_secret_new_multi_billi.../ http://www.creators.com/.../a-multi-billion-dollar-secret.html
http://www.statedatalab.org/.../kentucky-pension-investments-... http://www.nationalmemo.com/multi-billion-dollar-secret/
http://inthesetimes.com/.../wall_street_to_workers_give_us_yo... http://www.truthinaccounting.org/.../kentucky-pension-investm...
http://www.radiofree.org/us/a-multi-billion-dollar-secret/ http://www.globalpossibilities.org/wall-street-to-workers-.../
http://www.nationofchange.org/.../multi-billion-dollar-secret/ http://www.fchornet.com/.../if-you-are-a-public-school-h38956...
http://prominentwww.alternet.org/.../good-luck-getting-answer... http://www.mynextfone.co.uk/.../if-you-are-a-public-school-h4...
http://www.truthdig.com/.../a_multi-billion_dollar_secret_201... http://www.herald-dispatch.com/opinions/x1753192546/Editorial-Publics-right-to-know-undercut-by-some-pension-systems#.VIb_pDgKd2w.twitter

*[signature]* 8/24/15
RANDOLPH WIECK, PLAINTIFF                      DATE
1303 NIGHTINGALE LANE
GOSHEN, KY 40026

*[signature]* 8/25/15
BETSEY BELL, PLAINTIFF                         DATE
2030 MURRAY AVENUE
LOUISVILLE, KY 40205

*[signature]* 8/24/15
JANE C. NORMAN (RETIRED), PLAINTIFF            DATE
1909 EMERSON AVENUE
LOUISVILLE, KY 40205