UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


RANDOLPH WIECK, et al.,                                           PLAINTIFFS


v.                                        CIVIL ACTION NO. 3:15-CV-692-CRS


BOARD OF TRUSTEES OF THE
KENTUCKY TEACHERS' RETIREMENT
SYSTEM, et al.,                                                   DEFENDANTS


## MEMORANDUM OPINION

I.      Introduction

The pro se plaintiffs, current and retired teachers Randolph Wieck, Betsey Bell, and Jane Norman (collectively, "Plaintiffs"), filed this putative class action on behalf of similarly situated members of the Kentucky Teachers' Retirement System ("KTRS"). Compl. 1, ECF No. 1. The complaint asserts many causes of action, including violations of the Contract Clause, Takings Clause, and Due Process Clause of the Fifth Amendment of the United States Constitution, the Fair Labor Standards Act ("FLSA"), the Securities Act, the Investment Advisers Act of 1940, various state statutes, and common law breach of fiduciary duty. *Id.* at 2–3, 5–8. The foundation of Plaintiffs' claims rest in alleged mismanagement of KTRS, resulting in an underfunding of the system. *Id.* ¶ 5. The defendants include the Board of Trustees of KTRS (the "Board"), the Attorney General ("AG"), the Auditor of Public Accounts ("Auditor"), the Kentucky Educational Association, and multiple investment companies. *Id.* at 1.

The AG, Auditor, the Board, and investment firms KKR & Co. L.P. ("KKR"), Rockwood Capital, LLC ("Rockwood"), The Blackstone Group L.P. ("Blackstone"), and Highbridge

Capital Management LLC ("Highbridge") (collectively, "Defendants") move to dismiss the claims. Plaintiff Betsey Bell responded by filing a one-page letter to the Court "on behalf of" Randolph Wieck.[1] Pl.s' Resp. Opp. Mot. Dismiss, ECF No. 40. Two Defendants, the Carlyle Group and the Kentucky Educational Association ("KEA"), have not filed motions to dismiss the claims pending against them. The Carlyle Group seems to have been served with process, but has failed to make an appearance. The KEA filed an answer, in which they asserted various bases for dismissal, framed as affirmative defenses. KEA's Answer 3–4, ECF No. 22.

For the reasons below, the Court will dismiss all state law claims against the AG, Auditor, and the Board without prejudice based upon the doctrine of sovereign immunity. The Court will dismiss all other claims against those Defendants without prejudice for improper venue. The Court will dismiss all claims against Highbridge without prejudice for insufficient service of process. Finally, the Court will dismiss all claims against KKR, Rockwood, and Blackstone with prejudice for failure to state a claim upon which relief may be granted.

II.   Background

For the purposes of these motions, the Court assumes the following factual allegations are true. Plaintiffs are members of KTRS, which is managed by the Board. Compl. ¶ 21, ECF No. 1. As of June 2013, KTRS had a funding ratio of 51.9% due to underfunding by the legislature. *Id.* ¶ 18. As a result of this underfunding, the Board approved a nearly 4% additional taking from teachers, labeled as "payment for retiree health care." *Id.* ¶ 22. Plaintiffs filed this action, seeking as damages a refund of any amounts collected in excess of the original contribution rate. *Id.* ¶ 46. In the alternative, they seek injunctive relief, preventing future additional amounts from being

---

[1] This Court assumes that the response was filed additionally "on behalf of" the other named plaintiff, Jane Norman, as well as "on behalf of" Betsey Bell herself. As pro se plaintiffs, they cannot act as attorneys, and each Plaintiff can only represent him/herself.

deducted from their pay, above the original contribution rate. *Id.* Plaintiffs also seek injunctive relief demanding that the Court order the Board to (1) communicate honestly the underfunding to its members, (2) demand full contributions from the legislature, (3) bring civil suit against the legislature within one year of inaction, and (4) amend its investment guidelines. *Id.* ¶ 44–52. In addition, Plaintiffs ask the Court to order the federal government to direct federal education funds solely to education, rather than to pensions. *Id.* ¶ 50. Finally, Plaintiffs are asking for attorney fees and costs under 42 U.S.C. § 1983. *Id.* ¶ 52.

Plaintiffs argue that KTRS' underfunding is due in large part to mismanagement by the Board. *Id.* ¶ 8. Plaintiffs allege that the Board's failure to aggressively lobby and demand full funding from the legislature resulted in teachers having an additional 4% taken from their pay for the benefit of current retirees and for interest on the debt. *Id.* ¶ 5. This increase in required payments to KTRS, Plaintiffs' argue, violates the FLSA because it causes teachers to be underpaid. *Id.* ¶ 7. They argue that this "corrupt KTRS system" violates the Contract Clause and the Takings Clause of the United States Constitution because it has resulted in an increase in required payments without a corresponding increase in benefits. *Id.* ¶ 7, 11.

In addition to the Board's failure to demand full funding, Plaintiffs allege various instances of mismanagement, in violation of statutory and common law breach of fiduciary duty. In its newsletters, the Board did not apprise Plaintiffs of KTRS' underfunding for ten consecutive years in breach of their fiduciary duty, only alerting Plaintiffs to the underfunding in 2014. *Id.* ¶ 14–18. The Board employed alternative investment managers, known for their "underperformance, excessive fees, excessive risks, and a lack of transparency." *Id.* ¶ 17. The Board did not require that these alternative investment managers adhere to ethics and disclosure rules, in violation of Kentucky Revised Statutes § 161.430 and Sections 206(1), 206(2), and

206(4) of the Investment Advisers Act. *Id.* ¶ 29. The Board issued over $888 million in Pension

Obligation Bonds without disclosing material information regarding their underfunding, in

violation of Sections 17(a)(2) and 17 (a)(3) of the Securities Act. *Id.* ¶ 22. The Board has failed

to post board minutes in a timely manner, in violation of Kentucky Revised Statutes § 161.250

4(d). *Id.* ¶ 26. The Board refused to provide their contracts with investment firms when requested

by Plaintiffs, in violation of the Open Records Act. *Id.* ¶ 30. The Board invested in high-risk

investments in violation of Kentucky Revised Statutes § 386.020. *Id.* ¶ 29.

With regard to the Auditor, Plaintiffs allege that he refused to do an audit on KTRS, in

violation of his duty under Kentucky Revised Statutes § 161.370. *Id.* ¶ 31. Similarly, Plaintiffs

allege that the Board employed outside counsel, spending hundreds of thousands of dollars in the

process, even though the AG is required to provide legal services at no cost to KTRS, in

violation of Kentucky Revised Statutes § 161.370. *Id.* ¶ 31. Plaintiffs do not appear to assert any

particular causes of action against the various investment firms or the KEA.

Defendants move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure

12(b)(1), 12(b)(3), 12(b)(4), 12(b)(5), 12(b)(6), and the doctrine of sovereign immunity.

III.    <u>Grounds for Motions to Dismiss</u>

a.    <u>Failure to State a Claim and Lack of Standing</u>

All motions to dismiss currently before the Court state, as one basis, failure to state a

claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

Defendants asserting this basis for dismissal are the AG and Auditor, ECF No. 24, the Board,

ECF No. 25-1, KKR and Rockwood, ECF No. 26, Rockwood, ECF No. 28, Blackstone, ECF No.

31, and Highbridge, ECF No. 35. Additionally, two motions to dismiss by the AG and Auditor

and the Board simultaneously assert lack of standing, further warranting dismissal for lack of

subject-matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1). For the reasons below, the Court will dismiss all claims against KKR, Rockwood, and Blackstone for failure to state a claim upon which relief may be granted. While the Court lacks jurisdiction to decide the claims against the AG, Auditor, Board, and Highbridge on the merits for reasons stated in Sections III(b)–(e) below, the Court will address the parties' arguments below.

1. Legal Standard

*Failure to State a Claim*

To state a claim, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss for failure to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiffs" and assume that all well-pleaded allegations are true. *Robert N. Clemens Tr. v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007) (internal quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While detailed factual allegations are not required to survive a motion to dismiss, there must be more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Courts have long held pro se complaints to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such complaints must be liberally

construed, "and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). However, this lesser standard does not require the courts to "conjure up unpled allegations." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979)).

*Lack of Standing*

Article III of the Constitution requires that the Plaintiffs show that (1) they have "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," (2) the injury may be fairly traced to that conduct, and (3) the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quotations omitted). Absent the elements of standing, an Article III court may not hear a claim. *See id.*

2.   Analysis

*The AG, Auditor, and Board*

The AG and Auditor appear to assert that Plaintiffs fail to allege that their actions can be fairly traced to Plaintiffs' injuries. AG and Auditor's Mot. Dismiss 7, ECF No. 24-1. In addition, they appear to assert grounds for dismissal based upon failure to state a claim for many of Plaintiffs' causes of action. Similarly, the Board asserts that Plaintiffs lack standing and that they fail to state a claim upon which relief may be granted for many of Plaintiffs' claims.

Breach of Fiduciary Duty

As to Plaintiffs' breach of fiduciary duty claim, there is no standing against the AG and Auditor because those Defendants are not fiduciaries of KTRS. "Fiduciary" is not defined in the KTRS statutes, so the Court turns to the definition of a fiduciary outlined elsewhere. The

Employment Retirement Income Security Act of 1974[2] defines "fiduciary" as a person who (1) exercises discretionary authority or control over management of the plan or its assets, (2) renders investment advice with respect to the plan, or (3) has discretionary authority or responsibility in administration of the plan. 29 U.S.C. § 1002(21)(A).

According to the KTRS statutes, the AG and Auditor simply provide legal advice and audit the plan. Ky. Rev. Stat. Ann. § 161.370. As such, they do not manage the plan, provide investment advice, or administer the plan. Plaintiffs do not allege that the AG and Auditor are members of the Board or that they owe Plaintiffs some other fiduciary duty. If the AG and Auditor owed the Plaintiffs no fiduciary duty, they could not be said to have breached such a duty. As such, Plaintiffs cannot point to any wrongdoing on the part of the AG and Auditor that caused their injury. Therefore, as to the breach of fiduciary duty claim, Plaintiffs have no standing against the AG and Auditor and the Court would dismiss Plaintiffs' claims against them if it had jurisdiction.

In contrast, the Board owes members of KTRS a fiduciary duty, as outlined in Kentucky Revised Statutes § 161.430(2). With respect to KTRS assets, the statute requires the Board to act (1) for the exclusive purpose of providing benefits to members and administering the system, (2) with the care, skill, prudence, and diligence of a prudent person in a like position in like circumstances, (3) by diversifying investments, and (4) in accordance with the statutes and regulations governing KTRS. Ky. Rev. Stat. Ann. § 161.430(2).

In support of their breach of fiduciary duty claim, Plaintiffs allege that the Board "allowed the legislature to underfund the employer portion," and that "[i]nstead of demanding publicly and in legal action that the state pay its legally stipulated share," it approved a 4%

---

[2] While this statutory scheme does not apply to governmental retirement plans, its definition of "fiduciary" is instructive.

increase in employee contributions to help pay for "other retirees' benefits and for the interest on the debt resulting from this corrupted system." Compl. ¶ 5, ECF No. 1. Because the Board does not and cannot control the legislature, this allegation does not state a claim. However, Plaintiffs allege that "52% of the funding shortfall in KTRS assets has been caused by poor investments controlled by" the Board. *Id.* ¶ 32. Plaintiffs also allege that the Board failed to inform members of the alleged underfunding of KTRS for close to ten years. *Id.* ¶ 14–18. These allegations, assumed true, could allow the Court to draw the reasonable inference that the Board was not acting with the care, skill, prudence, and diligence required by law. Plaintiffs also allege that the Board failed to post board minutes in a timely manner and to respond to open records requests. *Id.* ¶ 26, 30. These allegations, assumed true, would indicate that the Board was not acting in accordance with the governing statutes in breach of its fiduciary duty.

Given that the Court views the complaint in the light most favorable to the Plaintiffs and given that they are pro se, it does not appear beyond doubt that they are unable to prove facts in support of their breach of fiduciary duty claim. Therefore, if this Court had jurisdiction over the merits of these claims, it would deny the Board's motion to dismiss for failure to state a claim as to the breach of fiduciary duty claim.

<u>Contract Clause</u>

The Contract Clause provides "[n]o State shall … pass any … Law impairing the Obligation of Contracts." U.S. Const. art. I § 10, cl. 1. To determine if there has been a violation of the Contract Clause, courts ask "whether the change in state law has operated as a substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (internal quotation marks omitted). The threshold analysis can be broken down into three components: (1) whether there is a contract, (2) whether there is a change in law that impairs that

contract, and (3) whether the impairment is substantial. *Id.* The proper defendant in this constitutional challenge includes not only the party responsible for changing the law, but also the party charged with the duty of enforcing the law. *See Ex parte Young*, 209 U.S. 123, 161 (1908).

Plaintiffs do not allege that the AG, Auditor or Board passed any laws impairing their contract. Thus, they will only be proper defendants in this action if they are charged with the duty of enforcing the offending law. Plaintiffs cite the law requiring an additional "nearly 4%" deduction from their pay as violating the Contract Clause. Thus, in order to be proper party-defendants, the AG, Auditor, and Board must be charged with the duty of enforcing this 4% deduction from Plaintiffs' pay. In fact, the Board of Education – not the AG, Auditor, or Board – is the party charged with deducting members' retirement contributions. *See* 102 KAR 1:125(1). Therefore, Plaintiffs do not allege any wrongdoing on the part of the AG, Auditor, or Board that caused their injury and have no standing against the AG, Auditor, or Board on their Contract Clause claim. Thus, if the Court had jurisdiction over the merits of this claim, it would dismiss Plaintiffs' Contract Clause claim against the AG, Auditor, and Board.

<u>Takings Clause</u>

The Takings Clause prohibits the taking of private property "for public use, without just compensation." U.S. Const. amend. V. The two part test for determining whether there has been a taking asks (1) whether the claimant has a cognizable property interest and (2) whether a taking occurred. *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.* 365 F.3d 435, 481 (6th Cir. 2004). The existence of a cognizable property interest relies upon whether there is an existing understanding of such an interest in statutes or common law. *Id.* "Real property, tangible property, and intangible property, all may be the subject of takings claims." *Id.* at 482 (internal quotation marks omitted).

Plaintiffs do not allege that any act by the AG or Auditor caused a taking of their benefits or pay. The AG and Auditor's duties are only to provide legal counsel to the Board and to audit KTRS. Ky. Rev. Stat. Ann. § 161.370. Similarly, as discussed above, neither the AG nor the Auditor is charged with enforcing the deductions from Plaintiffs' pay. As such, Plaintiffs do not allege any wrongdoing on the part of the AG and Auditor that caused their injury and have no standing against them on their Takings Clause claim. Thus, if the Court had jurisdiction over the merits of this claim, it would grant the AG and Auditor's motion to dismiss the Takings Clause claim for lack of standing.

The AG, Auditor, and Board focus a great deal in their motions to dismiss for failure to state a claim on whether Plaintiffs have a cognizable property interest in their future pension benefits. AG & Auditor's Mot. Dismiss 15, ECF No. 24-1, Bd.'s Mot. Dismiss 30, ECF No. 25-1. They fail to adequately address the possibility that Plaintiffs have a cognizable property interest in their net pay. Plaintiffs allege in their complaint that the 4% decrease in their net pay violates the Takings Clause "by divesting public employee benefits without just compensation." Compl. ¶ 11, ECF No. 1. Plaintiffs allege that this additional 4% taken from their net pay is "not for their own earned benefits in that period, but for other retirees' benefits and for the interest on the debt resulting from this corrupted system." *Id.* ¶ 5. Plaintiffs have a property interest in the income they have lawfully earned, and Plaintiffs allege that the additional 4% of their net pay is being taken by the State with no return benefit.[3] Given that the Court views the complaint in the light most favorable to the Plaintiffs and given that they are pro se, it does not appear beyond doubt that they are unable to prove facts in support of their claims. Therefore, if this Court had

_____

[3] The Court notes that Jane Norman, the currently retired Plaintiff, would not be able to state a claim under the Takings Clause unless she, too, suffered a decrease in her net pay without a return benefit before she retired.

jurisdiction over the merits of these claims, it would deny the Board's motion to dismiss for failure to state a claim as to the Takings Clause claim.

Due Process Clause

Plaintiffs allege that the Board's mismanagement and corruption caused the teachers to be underpaid by nearly 4% of their pay, resulting in a violation of the Due Process Clause. *Id.* at 2–3. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

Plaintiffs do not allege any wrongdoing on the part of the AG or Auditor that caused a deprivation of their pay. As discussed above, the AG and Auditor do not have the authority to take such action. As such, Plaintiffs do not allege any wrongdoing on the part of the AG and Auditor that caused their injury and have no standing against them on their Due Process Clause claim. Thus, if this Court had jurisdiction over the merits of this claim, it would grant the AG and Auditor's motion to dismiss Plaintiffs' Due Process Clause claim for lack of standing.

Plaintiffs likely have a property interest in their net pay. Plaintiffs allege in their complaint that the 4% decrease in their net pay violates the Due Process Clause because it deprives "employees of property rights without due process." Compl. ¶ 12, ECF No. 1. Plaintiffs, however, fail to allege how their due process right has been violated. The remaining sentences in the complaint regarding the Due Process Clause claim merely quote the Fifth and Fourteenth Amendments. *See id.* Because these are mere formulaic recitations of law and legal conclusions, this Court would dismiss the Plaintiffs' Due Process Clause claim against the AG, Auditor, and the Board for failure to state a claim if it had jurisdiction over these Defendants.

Securities Act of 1933

Plaintiffs allege that, in securing "the issuance of over $888 million in secret, taxable Pension Obligation Bonds," the Board violated Sections 17(a)(2) and 17(a)(3) of the Securities Act. *Id.* ¶ 22. The Securities Act provides that it is unlawful for a person in the offer or sale of securities to, among other things, obtain money or property by making a false statement or materially omitting information, which misleads, or to engage in fraud or deceit upon the purchaser. 15 U.S.C. § 77q(a). Only purchasers of securities have standing to bring suit under this statute. *Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 1194, 1196 (6th Cir. 1981).

Plaintiffs do not allege that they were purchasers of these "secret" bonds. Therefore, they do not have standing to sue the AG, Auditor, or Board on their Securities Act claims. If this Court had jurisdiction over the merits of these claims, it would dismiss Plaintiffs' claims under the Securities Act for lack of standing.

Investment Advisers Act of 1940

Plaintiffs allege that the Board allowed alternative investment managers to violate Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940. Compl. ¶ 29, ECF No. 1. The Investment Advisers Act prohibits any *investment adviser* from, among other things, employing a device to defraud clients, engaging in a practice of fraud or deceit, or engaging in an act that is fraudulent, deceptive, or manipulative. 15 U.S.C. § 80b-6 (emphasis added). An "investment adviser" is defined as "any person who, for compensation, engages in the business of advising others … as to the value of securities or as to the advisability of investing … or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." 15 U.S.C. 80b-2.

Plaintiffs do not allege that the AG, Auditor, and Board are investment advisers, and their official duties do not match those of investment advisers. Rather, the AG and Auditor simply provide legal advice and audit the plan. Ky. Rev. Stat. Ann. § 161.370. The Board's duties include the "general administration and management of the retirement system, and the responsibility for its proper operation" and for executing certain provisions. Ky. Rev. Stat. Ann. § 161.250. As to investing KTRS funds, the Board has the power to buy, sell, exchange, and transfer KTRS assets. Ky. Rev. Stat. Ann. § 161.430(1). In making these decisions, the statute directs the Board to employ investment counselors. *Id.* However, the Board itself does not advise others as to investments. Therefore, Plaintiffs do not allege any wrongdoing on the part of the AG, Auditor, or the Board that caused their injury, and have no standing to sue these Defendants on their Investment Advisers Act claims. As such, if this Court had jurisdiction over the merits of these claims, it would dismiss Plaintiffs' claims under the Investment Advisers Act.

<u>Fair Labor Standards Act</u>

Plaintiffs allege that the corrupt KTRS system causes teachers to be underpaid by 4% in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, but do not allege violation of any particular section of that Act. Compl. ¶ 7, ECF No. 1. The FLSA creates a private right of action only by employees against *employers* for violations of the Act. 29 U.S.C. § 216(b). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee" and includes a public agency. 29 U.S.C. § 203(d).

Plaintiffs do not allege that they are employees of the AG, Auditor, or the Board. Plaintiffs are current or retired teachers of the Kentucky school system, and do not work for the AG, Auditor, or the Board. The AG, Auditor, and the Board do not employ any of these teachers. Furthermore, as teachers, Plaintiffs are exempt from coverage under the FLSA. 29 U.S.C. §

13

213(a)(1); 29 C.F.R. § 541.303. Therefore, Plaintiffs fail to state a claim against the AG, Auditor, or the Board on their FLSA claim and have no standing to bring suit under the FLSA. As such, if this Court had jurisdiction over the merits of these claims, it would dismiss Plaintiffs' claims under the FLSA.

Kentucky State Statutory Claims

The Court seriously questions whether Plaintiffs have standing to bring any of these Kentucky statutory claims. The only KTRS statute granting a private right of action appears to be Kentucky Revised Statutes § 161.250(2):

> A member, retired member, or designated beneficiary may appeal the retirement system's decisions that materially affect the amount of service retirement allowance, amount of service credit, eligibility for service retirement, or eligibility for survivorship benefits to which that member, retired member, or designated beneficiary claims to be entitled. All appeals must be in writing and filed with the retirement system within thirty (30) days of the claimant's first notice of the retirement system's decision. . . . A member, retired member, or designated beneficiary who has filed a timely, written appeal of a decision of the retirement system may, following the administrative hearing and issuance of the final order by the board of trustees, appeal the final order of the board of trustees to the Franklin Circuit Court.

Ky. Rev. Stat. Ann. § 161.250(2). The following statutory claims were not brought through the administrative appeals system outlined in the statute. Regardless, the Court will address the individual claims below.

*KRS § 161.250(4)(d)*

Plaintiffs allege that Defendants violated transparency laws by not posting board minutes in a timely manner. Compl. ¶ 26, ECF No. 1. The applicable provision provides that the Board shall post board minutes within 72 hours of adoption or ratification by the Board. Ky. Rev. Stat. Ann. § 161.250(4)(d). This statute places the duty to post board minutes on the Board. This

14

allegation, if true, would reveal a violation of the Board's statutory duty. Therefore, this Court would deny the Board's motion to dismiss under this statute if it had jurisdiction over the matter.

Plaintiffs do not allege that the AG and Auditor are on the Board. Therefore, Plaintiffs do not allege any wrongdoing on the part of the AG and Auditor that caused their injury and have no standing to sue the AG and Auditor in violation of this statute. Thus, if the Court had jurisdiction over the merits of this claim, it would dismiss Plaintiffs' claim under Kentucky Revised Statutes § 161.250(4)(d) against the AG and Auditor.

*KRS § 161.370*

Plaintiffs allege that the "Auditor has refused to do an audit on KTRS" and that the Board has spent KTRS funds on outside legal counsel when it can employ the AG at no cost, in violation of Kentucky Revised Statutes § 161.370. Compl. ¶ 31, ECF No. 1. The applicable statute provides that the Auditor shall be the auditor of the Board and that the AG shall be the legal adviser to the Board, and that they both shall perform their duties without compensation. Ky. Rev. Stat. Ann. § 161.370(1). However, the statute gives the Board the discretion to employ other attorneys when doing so is in the best interests of KTRS. *Id.* Similarly, the Board may use independent auditors, which relieves the Auditor from performing an annual audit. Ky. Rev. Stat. Ann. § 161.370(2)(a). However, the Auditor himself must perform an audit at least once every five years. Ky. Rev. Stat. Ann. § 161.370(2)(b).

The Board did not address this claim in their motion to dismiss. As a result, the Court will not address this claim as it relates to the Board and would allow the claim to go forward if it had the jurisdiction to do so.

As to the AG, Plaintiffs merely allege that the Board employed outside counsel in its discretion, which is permitted in the statute. Plaintiffs do not assert any wrongdoing on the part

15

of the AG that is fairly traceable to their claimed injury. Therefore, Plaintiffs do not have standing to assert this statutory claim against the AG.

As to the Auditor, Plaintiffs allege that the Auditor has refused to perform an audit. Assuming the factual allegations in the complaint are true, this claim does allege a failure to carry out a statutory duty on the part of the Auditor. However, the AG and Auditor make a further motion to dismiss for failure to state a claim on this statute. The allegations in the complaint against the Auditor as to this violation solely cite a "website counting the days the State Auditor has refused to do an audit on KTRS" as well as a "2012 Independent Counsel report by former SEC attorney Edward Siedle [documenting] how the Auditor's office helped cover up and enable public corruption in the KTRS' sister retirement system, KRS." Compl. ¶ 31, ECF No. 1. These are the only "factual allegations" pleaded against the Auditor in the complaint. These statements do not state a claim against the Auditor that would entitle Plaintiffs to relief. Thus, if the Court had jurisdiction over the merits of this claim, it would dismiss Plaintiffs' claim under Kentucky Revised Statutes § 161.370 against the AG and Auditor.

*KRS § 161.400*

Plaintiffs allege that Defendants' failure to hire an actuary violated Kentucky Revised Statutes § 161.400. Compl. ¶ 23, ECF No. 1. The applicable statute provides that the Board must designate a competent actuary. Ky. Rev. Stat. Ann. § 161.400(1)(a).

Plaintiffs do not allege that the AG and Auditor are members of the Board, and do not allege any duty on the part of the AG and Auditor to designate an actuary. Therefore, Plaintiffs do not assert any wrongdoing on the part of the AG and Auditor that caused their injury, and have no standing to sue the AG and Auditor in violation of this statute. Thus, if the Court had

jurisdiction over the merits of this claim, it would dismiss Plaintiffs' claim under Kentucky Revised Statutes § 161.400 against the AG and Auditor.

The Board did not address this claim in their motion to dismiss. As a result, the Court will not address this claim as it relates to the Board and would allow the claim to go forward if it had the jurisdiction to do so.

### KRS § 161.430

Plaintiffs allege that alternative investment entities chosen by the Board "have not documented in their contracts that they adhere to investment ethics and disclosure rules as required" by Kentucky Revised Statutes § 161.430. Compl. ¶ 29, ECF No. 1. The applicable statute grants various powers and places various duties upon the Board. Ky. Rev. Stat. Ann. § 161.430.

This statute does not mention the AG or the Auditor. Plaintiffs do not allege that the AG and Auditor are members of the Board. Therefore, Plaintiffs do not assert any wrongdoing on the part of the AG and Auditor that caused their injury, and have no standing to sue the AG and Auditor in violation of this statute. Thus, if the Court had jurisdiction over the merits of this claim, it would dismiss Plaintiffs' claim under Kentucky Revised Statutes § 161.430 against the AG and Auditor.

The Board did not address this claim in their motion to dismiss. As a result, the Court will not address this claim as it relates to the Board and would allow the claim to go forward if it had the jurisdiction to do so.

### KRS § 161.550

Plaintiffs allege that Defendants have failed to fully fund the system as outlined in Kentucky Revised Statutes § 161.550. Compl. ¶ 23, ECF No. 1. This statute provides that each

employer and the State shall contribute a statutorily set amount each year. Ky. Rev. Stat. Ann. § 161.550. The power to pay the State's share lies with the General Assembly. Ky. Rev. Stat. Ann. § 161.550(2)(b). In fact, the Supreme Court of Kentucky decided in a case involving the Kentucky Retirement Systems that the Board of Trustees' powers in managing its retirement system did not include the right to demand funding from the General Assembly. *Jones v. Bd. of Trs. of Ky. Ret. Sys.*, 910 S.W.2d 710, 713 (Ky. 1995).

Plaintiffs do not allege that the AG, Auditor, or Board employ teachers in KTRS or that they are members of the General Assembly. Therefore, the AG and Auditor have no statutory duty under Kentucky Revised Statutes § 161.550. As such, Plaintiffs do not assert any wrongdoing on the part of the AG and Auditor that caused their injury, and have no standing to sue the AG and Auditor in violation of this statute. Likewise, the Board cannot force employers or the General Assembly to fully fund KTRS. As such, Plaintiffs lack standing against the Board as well. Thus, if the Court had jurisdiction over the merits of this claim, it would dismiss Plaintiffs' claim under Kentucky Revised Statutes § 161.550 against the AG, Auditor, and the Board.

### KRS § 386.020

Finally, Plaintiffs allege that the Board "invested in high-risk alternative investments not appropriate for fiduciaries" in violation of Kentucky Revised Statutes § 386.020. Compl. ¶ 29, ECF No. 1. The applicable statute provides a list of investments which are permissible for fiduciaries holding funds for loan or investment. Ky. Rev. Stat. Ann. § 386.020. However, this statute is outside the statutes governing KTRS and does not apply to trustees. Instead, the applicable laws governing investment of funds by the Board are Kentucky Revised Statutes § 161.430 and 102 Kentucky Administrative Regulation 1:175. The Kentucky Administrative

18

Regulation expressly permits the Board to invest in alternative investments up to a certain amount. 102 Ky. Admin. Reg. 1:175 § 2(2)(g). Thus, if the Court had jurisdiction over the merits of this claim, it would dismiss Plaintiffs' claim under Kentucky Revised Statutes § 386.020 against the AG, Auditor, and the Board.

Therefore, this Court finds grounds to dismiss all claims against the AG and Auditor. As to the Board, this Court finds grounds to dismiss as to some claims, but not others. At any rate, this Court lacks jurisdiction to decide these claims on the merits as to these Defendants, as discussed in Sections III(b)–(e) below.

*KKR, Rockwood, Blackstone, and Highbridge*

KKR, Rockwood, Blackstone, and Highbridge all assert that Plaintiffs fail to state a claim against them because the complaint fails to allege any wrongdoing by them. Defs.' Mot. Dismiss, ECF 26-1, 28-1, 31-1, 35-1. There are only a few references to these Defendants listed in the complaint. First is the statement connected with an allegation that the Board is breaching its fiduciary duty by investing with managers who lobby against teachers, stating that a "current KTRS Alternatives manager, Highbridge, remains on the AFT list, meaning KTRS investment policy remains hostile to the best interests of teachers." Compl. ¶ 28, ECF No. 1. This reference does not state a claim against Highbridge.

The second reference is Plaintiffs' claim that "KTRS has failed in their fiduciary duty by selecting investments and investment managers not permitted by statute …" and going on to state "KTRS managers who have hired lobbyists in Frankfort include KKR, JP Morgan (Highbridge) and Blackstone." *Id.* ¶ 29. This reference does not state a claim against KKR, Highbridge, or Blackstone.

The third reference in the complaint states "KTRS has committed the following additional illegal investments: March 15, 2015 $180 million to Carlyle Group, Blackstone Group, and Rockwood Capital; Dec 14, 2014 $235 million to limited partnerships of Audax Group, KKR & Co., Riverstone Holdings, and Oaktree. KTRS has refused to provide legal disclosure of limited partnerships." *Id.* ¶ 39. Once again, this portion of the complaint alleges no wrongdoing against the investment firms. This reference does not state a claim against Blackstone, Rockwood, or KKR.

Additional vague references to "alternative investment managers" also fail to state a claim against any of these Defendants. Plaintiffs state in their complaint that the Board began employing alternative investment managers, stating "[a]lternative managers have been criticized extensively in the National Press for underperformance, excessive fees, excessive risks, and a lack of transparency." *Id.* ¶ 17. Not only does this reference fail to direct a cause of action against any particular Defendant, it also fails to allege any particularized wrongdoing against any alternative investment managers. Similarly, when Plaintiffs state "KTRS has failed in their fiduciary duty by selecting investments and investment managers not permitted by statute of the Commonwealth of Kentucky," later stating "[m]any of these alternative investment entities have not documented in their contracts that they adhere to investment ethics and disclosure rules," Plaintiffs again do not state a claim against these Defendants because they allege no wrongdoing or, indeed, assert any cause of action. *Id.* ¶ 29.

These cursory references to KKR, Rockwood, Blackstone, and Highbridge are not sufficient to state a claim upon which relief may be granted. Plaintiffs do not allege that these Defendants have violated any duties owed to them or caused injury to them in any way. As such, this Court will dismiss all claims against KKR, Rockwood, and Blackstone with prejudice for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[4] As to Highbridge, however, this Court does not have personal jurisdiction to decide these claims on the merits due to insufficient service of process, discussed below in Section III(e), and therefore cannot dismiss with prejudice.

### b. Sovereign Immunity

The AG and Auditor and the Board both assert the doctrine of sovereign immunity in their motions to dismiss. Defs.' Mot. Dismiss, ECF 24 & 25-1. For the reasons below, the Court will dismiss all state claims against the AG, Auditor, and Board without prejudice based upon the doctrine of sovereign immunity.

### 1. Legal Standard

The doctrine of sovereign immunity, rooted in the Eleventh Amendment to the United States Constitution, is a limit on federal judicial power. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Absent a state's unequivocal expression of consent, a state is immune to suit in federal court. *See id.* at 99. This immunity extends to suits brought by citizens of that state. *Id.* at 100. In addition, the immunity applies no matter the nature of the relief sought, including injunctive relief, so long as the plaintiff's allegation is that a state officer in his official capacity is violating state law. *See id.* at 100–02. An exception to sovereign immunity applies where a plaintiff alleges that state action violates the United States Constitution. *See Ex parte Young*, 209 U.S. 123, 160 (1908). While immunity does not apply where the conduct is challenged as unconstitutional, it does apply where the basis of the

---

[4] As noted, one investment firm – the Carlyle Group – did not file a motion to dismiss. In fact, the Carlyle Group has not responded in any way to this litigation. While it appears that it was served process, this Court has no way of knowing whether that service was proper or whether it was served upon the correct party. Regardless, in the same way that the complaint was entirely insufficient as to KKR, Rockwood, and Blackstone, this Court would have dismissed all claims against the Carlyle Group if it had filed a motion to dismiss.

challenge is state law. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 102, 106. The rationale for this distinction rests in the doctrine of federalism. *See id.* at 106. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.*

In determining whether a state official is entitled to sovereign immunity, the relevant inquiry is whether "the state is the real, substantial party in interest." *Id.* at 101 (citations omitted). If the relief sought, whether damages or injunctive relief, would effectively operate against the State, then the doctrine of sovereign immunity applies. *See id.* at 101–02. Suits against state officials in their official capacity are not suits against the individual; rather, they are suits against the official's office and as such, the State. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). To determine whether a particular entity is clothed with sovereign immunity, the Court must look to (1) the potential liability of the State, (2) the language used to define the entity and the State's control over the entity, (3) who appoints the members, and (4) whether the entity performs state functions. *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650–51 (6th Cir. 2013). Most weight is given to the potential liability of the State. *Id.*

### 2. Analysis

*AG and Auditor*

The complaint repeatedly refers to the AG and Auditor solely by their official titles: "Attorney General" and "Auditor of Public Accounts." Compl. ¶ 22, 31, 38, ECF No. 1. Because these officials are being sued in their official capacity, any claims under state law cannot be heard in this Court. This bar encompasses the claim for breach of fiduciary duty, as well as all claims brought under the Kentucky Revised Statutes. As such, the doctrine of sovereign

immunity requires dismissal without prejudice of all state law claims against the AG and Auditor, including claims for breach of fiduciary duty and claims brought under the Kentucky Revised Statutes.

*The Board*

As to the Board, the Court must first determine whether the Board is an entity entitled to sovereign immunity, using the four-prong test outlined in *Town of Smyrna, Tenn*. Regarding the potential liability of the State, Plaintiffs demand damages in the form of a refund, or in the alternative, prospective injunctive relief, as well as injunctive orders regarding the future behavior of the Board. *Id.* ¶ 46–51. Any refund owed to the Plaintiffs would necessarily come from the KTRS fund, and any prospective injunctive relief would prevent further funds from coming into the fund. This relief would apply solely to the actions of the Board and the moneys held by KTRS, rather than to the State's treasury. However, because KTRS is underfunded, any refunds owed to contributors would come from contributions by employers – i.e., the State. Similarly, any reduction in amounts owed by employees would result in a necessary increase in employer contributions, which would come from the State, through its schools. Thus, the State would be potentially liable in this case.

The last three prongs of the test require an examination of the statutes governing KTRS. As to prong two, KTRS was created by statute as "an independent agency and instrumentality of the Commonwealth." Ky. Rev. Stat. Ann. § 161.230. Statutes largely dictate how the Board functions, including how Board meetings are to be conducted and how funds are to be invested. Ky. Rev. Stat. Ann. §§ 161.230, *et seq*. In addition, state officials serve as officials to the Board, with the authority to exert control over the Board. For example, the State Treasurer is the treasurer of the Board, the Auditor of Public Accounts is the auditor, and the Attorney General is

legal adviser. Ky. Rev. Stat. Ann. § 161.370. Thus, the Board is both defined as a state entity and staffed by state officials. As to prong three, membership on the Board consists of the chief state school officer, the State Treasurer, and seven other members elected by contributing members of KTRS and by retirees. Ky. Rev. Stat. Ann § 161.250–161.260. Therefore, the vast majority of the members are not appointed by the State. Finally, as to prong four, KTRS was created for the purpose of providing retirement allowances for state-employed teachers. Ky. Rev. Stat. Ann. § 161.230. Providing retirement benefits to state employees is traditionally a state function. Because three out of the four prongs indicate that the Board is entitled to sovereign immunity, this Court finds that the doctrine of sovereign immunity requires dismissal without prejudice of all state law claims against the Board, including claims for breach of fiduciary duty and claims brought under the Kentucky Revised Statutes.

### c.  Improper Venue

The AG, Auditor, and the Board move to dismiss Plaintiffs' claims against them on the basis of improper venue, warranting dismissal under Federal Rule of Civil Procedure 12(b)(3). Defs.' Mot. Dismiss, ECF No. 24 & 25-1. For the reasons below, the Court will dismiss all remaining claims against the AG, Auditor, and Board without prejudice for improper venue.

### 1.  Legal Standard

Venue is generally proper (1) in the judicial district where any defendant resides, so long as all defendants are residents of the district's state, (2) in the judicial district where a substantial part of the events giving rise to the claim occurred, or (3) if there are no such districts, in any judicial district where any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b).

2. <u>Analysis</u>

Plaintiffs do not assert a relevant basis for laying venue in the Western District of Kentucky. Instead, Plaintiffs allege that they "did not originally file in Franklin Circuit because of a significant concern of not receiving a fair trial." Compl. ¶ 42, ECF No. 1. When the Jefferson County judge dismissed the case for improper venue, stating that venue was instead proper in Franklin County, Plaintiffs allege they were forced to "seek redress from the Federal Court." *Id.*

Plaintiffs do not allege residency of the various Defendants. They certainly do not allege that any Defendant is a resident of the Western District of Kentucky. On the contrary, as government officials of Kentucky, the AG and Auditor, in their official capacities, would both be considered residents of Frankfort, which is located in the Eastern District of Kentucky. Likewise, KTRS' offices are located in Frankfort. Therefore, as pled, venue in the Western District of Kentucky may not be based upon residency.

Plaintiffs also fail to assert that a substantial part of the events giving rise to the claim occurred in the Western District of Kentucky. Instead, it would seem that any alleged wrongdoing on the part of the Defendants occurred in Frankfort. The AG and Auditor perform their official duties in Frankfort. The Board meets and makes decisions regarding KTRS in Frankfort. The KTRS fund is situated in Frankfort. Plaintiffs allege no wrongdoing that arose in the Western District. Therefore, it would appear that venue is proper in the Eastern District of Kentucky. As such, this Court will dismiss the remaining claims against the AG and Auditor and

against the Board without prejudice for improper venue under Federal Rule of Civil Procedure 12(b)(3).[5]

> ### d. Insufficient Process

The Board moves to dismiss Plaintiffs' claims against it based upon insufficient process, warranting dismissal under Federal Rule of Civil Procedure 12(b)(4). Bd.'s Mot. Dismiss, ECF No. 25-1. For the reasons below, the Court finds that process was sufficient in this case.

> #### 1. Legal Standard

Among other things, a summons must contain the name of the court and the parties, and must be directed to the defendant. Fed. R. Civ. P. 4(a)(1). As to construction of Rule 4, it is a "flexible rule which principally requires sufficient notice to the party of claims brought against it, and dismissal is not appropriate unless the party has been prejudiced." *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987).

> #### 2. Analysis

The Board argues that process was insufficient because the summons did not list KTRS or the Board as a Defendant, despite the fact that the complaint made clear that the Board is a Defendant in the action. Bd.'s Mot. Dismiss 10, ECF No. 25-1. Because the summons was accompanied by the complaint, and because the complaint identified the Board as a Defendant so as to give notice to the Board, this Court finds that process was sufficient in this case.

---

[5] As noted, one entity – the KEA – did not file any motion to dismiss, instead asserting improper venue as an affirmative defense in their answer. This passing mention is not the appropriate way to raise the Rule 12 motion in federal court. The KEA is also a Kentucky governmental entity, based in Frankfort, KY. For the same reasons that venue is improper against the AG, Auditor, and Board, this Court would have found that venue was improper against the KEA had they asserted the argument in the appropriate way. The KEA is advised that it must follow the Federal Rules of Civil Procedure if it seeks dismissal in federal court.

e.   Insufficient Service of Process

The Board and Highbridge move to dismiss Plaintiffs' claims against them based upon insufficient service of process, warranting dismissal under Federal Rule of Civil Procedure 12(b)(5). Defs.' Mot. Dismiss, ECF No. 25-1 & 35. For the reasons below, the Court will dismiss all claims against Highbridge without prejudice under Federal Rule of Civil Procedure 12(b)(5).

1.   Legal Standard

Under the applicable version[6] of Federal Rule of Civil Procedure 4(m), a plaintiff has 120 days after the complaint is filed in which to serve the complaint and summons on the defendant. If process is not served within the time limit, the court must either dismiss without prejudice upon motion by the defendant or order that service be made. Fed. R. Civ. P. 4(m).

Process must be served by a nonparty. Fed. R. Civ. P. 4(c)(2). In order to serve process on a corporation, partnership, or association, the plaintiff must either follow the state rules of the forum or the state where process is served, as stated in Federal Rule of Civil Procedure 4(e)(1), or the rules outlined in the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(h)(1). The Federal Rule allows for delivering a copy of the summons to an agent authorized to accept service. Fed. R. Civ. P. 4(h)(1)(B). In Kentucky, service may be made by certified mail, which is complete upon delivery of the envelope. CR 4.01(1)(a).

In order to serve process on a state-created governmental organization, the plaintiff must follow the state's law or serve process to the organization's chief executive officer. Fed. R. Civ. P. 4(j)(2). According to state law, service may be made on a government agency by serving the attorney general or assistant attorney general. CR 4.04(6). Service may be made on associations

---

[6] Subdivision (m) was amended, effective over three months after this complaint was filed, to shorten the time limit for service from 120 to 90 days. Because the complaint was filed while the 120 day period was still in effect, this Court is applying the 120 day period.

and corporations by serving an officer or managing agent or the agent authorized to receive service. CR 4.04(4)–(5).

2.  Analysis

*The Board*

The Board argues that process was not sufficiently served because summons was not issued to the proper agent for service of process. Bd.'s Mot. Dismiss 11, ECF No. 25-1. According to regulations both promulgated by and governing the Board, "the executive secretary occupies the position of chief administrative officer of the retirement system." 102 Ky. Admin. Regs. 2:025. The Board does not dispute that Gary Harbin is the executive secretary of the Board, as is indicated in the caption of the complaint. Compl. 1, ECF No. 1. Process was served on Gary Harbin. Ret. of Serv. Exec. 5, ECF No. 33. Therefore, this Court finds that the Board was properly served and would deny the Board's motion to dismiss under Federal Rule of Civil Procedure 12(b)(5).

*Highbridge*

The present complaint was filed on August 24, 2015. Compl. 1, ECF No. 1. Highbridge was not served until February 2, 2016; 162 days after Plaintiffs filed the complaint. Ret. of Serv. Exec. 1, ECF No. 34. This exceeds the time allowed under the rule. While use of certified mail was proper, Plaintiffs failed to perfect service before the time allowed elapsed. Plaintiffs did not seek an extension to effect service. Without sufficient service of process, this Court has no personal jurisdiction over Highbridge. As a result, this Court will dismiss all claims against Highbridge without prejudice under Federal Rule of Civil Procedure 12(b)(5).

IV.     <u>Conclusion</u>

For the reasons stated above, the Court will grant the AG and Auditor's motion to dismiss all state law claims against them without prejudice based upon the doctrine of sovereign immunity. The Court will grant the Board's motion to dismiss all state law claims against it without prejudice based upon the doctrine of sovereign immunity. The Court will grant the AG and Auditor's motion to dismiss all other claims against them without prejudice for improper venue under Federal Rule of Civil Procedure 12(b)(3). The Court will grant the Board's motion to dismiss all other claims against it without prejudice for improper venue under Federal Rule of Civil Procedure 12(b)(3). The Court will grant Highbridge's motion to dismiss all claims against it without prejudice for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). The Court will grant KKR's motion to dismiss all claims against it with prejudice for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Rockwood's motion to dismiss all claims against it with prejudice for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Blackstone's motion to dismiss all claims against it with prejudice for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

A separate order will be entered in accordance with this opinion.

September 29, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**

29